**Leuna Creekmore STEPHENS,**
**Plaintiff-Appellee,**

v.

**CITY OF DAYTON, TENNESSEE,**
**Defendant-Appellant.**

**No. 72–1864.**

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 31, 1973.

Decided March 2, 1973.

Jeffrey L. Cleary, Sizer Chambliss, Chattanooga, Tenn., for defendant-appellant; William B. Luther, Chattanooga, Tenn., on brief; Luther, Anderson & Ruth, Chattanooga, Tenn., of counsel.

Harry Berke, Chattanooga, Tenn., for plaintiff-appellee; Berke, Berke & Berke, Chattanooga, Tenn., of counsel.

Before McCREE, MILLER and KENT, Circuit Judges.

PER CURIAM.

This is an appeal from a judgment, in a personal injury action, for $42,400, reduced from a jury verdict of $52,400 by a remittitur of $10,000, to which the appellee agreed. The case was originally tried in November, 1971, and a jury verdict in favor of the appellee was returned in the amount of $7,000. Thereafter, and on November 17, 1971, by order of the District Court, counsel for the appellee was granted permission to interview the jurors. Subsequently one juror made an affidavit, which was attached to the appellee's motion for a new trial, in which the juror stated that another juror had, during the deliberations, volunteered a statement that the juror had observed the appellee on the parking lot, near the Federal Court building, and that she walked unattended in the parking lot much better than in the courtroom. The trial court later examined the juror who testified to the same effect as set forth in the affidavit. Thereafter, the trial court granted the motion for new trial.

On the second trial, in April, 1972, the jury returned a verdict in the amount of

$52,400 in favor of the appellee. Appellant filed a motion for leave to interrogate the jury which motion the same trial judge denied on authority of McDonald v. Pless, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915); Gault v. Poor Sisters of St. Frances Seraph of Perp. Ador., 375 F.2d 539 (6th Cir. 1967); Womble v. J. C. Penney Co., 431 F.2d 985 (6th Cir. 1970). In the opinion and order denying the appellant the right to interview jurors the Court said in part:

"This is an embarassment to the Court, because the plaintiff was allowed to interrogate members of an earlier jury herein; and, jurors should not generally be exposed to such intrusions [citations omitted].

"Although perhaps appearing on the surface to be comparatively unfair to the parties herein, this Court believes that it's original error in judgment * should not now be compounded."

In the footnote the Court stated "If the Court were making the same judgment today on application of the plaintiff, on the present showing of the defendant, the request would be denied."

Neither party to this lawsuit, in the initial request for authority to interrogate the jury, suggested that it was aware of any grounds or purpose for such an interrogation. Clearly, the desire to interrogate in each instance was what is commonly known as a *fishing expedition* in an effort to find material with which to impeach the verdict by the testimony of a juror.

█ The appellee contends that the affidavit and testimony of the juror on the first trial is sufficient ground to justify the new trial. We disagree.

The question of impeachment of a jury verdict by one of the jurors was before the Supreme Court of the United States in McDonald v. Pless, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915). The Court said at page 267, 35 S.Ct. at page 784:

"For while by statute in a few jurisdictions, and by decisions in others,

the affidavit of a juror may be received to prove the misconduct of himself and his fellows, the weight of authority is that a juror cannot impeach his own verdict. The rule is based upon controlling considerations of a public policy which in these cases chooses the lesser of two evils. When the affidavit of a juror, as to the misconduct of himself or the other members of the jury, is made the basis of a motion for a new trial, the court must choose between redressing the injury of the private litigant and inflicting the public injury which would result if jurors were permitted to testify as to what had happened in the jury room."

The same issue was before this Court only recently in Womble v. J. C. Penney Co., 431 F.2d 985 (6th Cir. 1970). Where this Court said at page 989:

"The general rule is that jurors may not impeach their verdict (McDonald v. Pless, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915)), but the rule does not preclude inquiry into any extraneous influences brought to bear upon the jury in order to show what the influences were and whether they were prejudicial. Gault v. Poor Sisters of St. Frances, 375 F.2d 539 (6th Cir. 1967); Stiles v. Lawrie, 211 F.2d 188 (6th Cir. 1954). Contrary to appellant's contention, federal and not state standards control in determining whether or not extraneous influences have so prejudiced jury consideration of the issues as to warrant reversal. Gault v. Poor Sisters of St. Frances, *supra,* 375 F.2d at 549; 6A J. Moore, Federal Practice ¶ 59.08 [4], at 3814 (2d ed. 1966). The District Court found that the alleged misconduct of the jury did not involve elements of extraneous influences, and went on to find that the jury used the quotient only as a point for discussion in arriving at a fair verdict, that several of the comments made by jurors during deliberation were statements of general experience background and did not amount to additional evidence

supplementary to that introduced during the trial."

We hold, as the trial court recognized, that it was an abuse of discretion for the trial judge to authorize counsel for a party to interrogate the jurors in an effort to impeach the jury verdict. We find no extraneous influence sufficient to justify the order setting aside the verdict of the jury which sat on the first trial. Under such circumstances we have no alternative except to require that the judgment from which this appeal is taken be set aside and order the case remanded to the trial court for entry of judgment on the verdict returned in the first trial.

Reversed.